UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN EDWARDS, CDCR #V-17007,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>MARCUS POLLARD, Warden; B.D. PHILLIPS, Associate Warden; D. LEWIS, Associate Warden; GARCIA, Facility Captain; KATHLEEN ALLISON, Secretary CDCR; CONNIE GIPSON, Deputy Direct, CDCR,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 2:21-cv-01157-JES-WVG<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT**<br><br>[ECF No. 44] |

　　　Plaintiff Allen Edwards ("Plaintiff"), an inmate housed at the Richard J. Donovan Correctional Facility ("RJD"), filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment when he contracted COVID-19 due to their alleged decisions and actions taken in response to the global pandemic. *See generally* ECF No. 1, Compl.

Before the Court is Defendants Motion for Summary Judgment. *See* ECF No. 44. Plaintiff filed an Opposition to Defendants' Motion, (ECF No. 49), and Defendants filed a Reply, (ECF No. 50).

Having reviewed the Parties' submissions and the applicable law, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DIRECTS** the Clerk of the Court to enter judgment in favor of Defendants and to close the case.

## I. PROCEDURAL BACKGROUND

On June 23, 2021, Plaintiff filed a Complaint under 42 U.S.C. § 1983 alleging that Defendants violated his Eighth Amendment rights when they placed other inmates infected with COVID-19 in his housing unit, ignored public health orders, failed to adopt social distancing and other cleansing measures, and neglected to enforce staff mask mandates. As a result of the alleged failings of Defendants, Plaintiff contracted the virus on December 8, 2020. *See* Compl., ECF No. 1 at 2–5.

On October 13, 2019, the Court screened his complaint pursuant to 28 U.S.C § 1915A, and directed the U.S. Marshal to effect service on Plaintiff's behalf. ECF No. 10. Defendants filed their Answer to Plaintiff's Complaint on August 26, 2022. ECF No. 19. Plaintiff filed an Amended Complaint ("FAC") on February 14, 2023, and Defendants filed their Answer to this Amended Complaint on March 30, 2023. ECF Nos. 34, 38.

Defendants moved for summary judgment on June 7, 2023. ECF No. 44. Plaintiff was notified of the requirements for opposing summary judgment pursuant to *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc) and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988). ECF No. 45.

## II. REQUEST FOR JUDICIAL NOTICE

Defendants seek judicial notice of "publications and data from the U.S. Centers for Disease Control (CDC) and World Health Organization (WHO)." ECF No. 44-1 at 2. Federal Rules of Evidence 201 provides, in part, that the Court may take judicial notice of facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Specifically, Defendants attach two exhibits to their request. The first exhibit is titled "CDC Museum COVID-19 Timeline" which they indicate is a document published on the CDC website "regarding general information about COVID-19's history in the United States and around the world from December 12, 2019 through July 8, 2022, available at http://www.cdc.gov/museum/timeline/covid19.htm." ECF No. 44-1 at 2, 5-48. The second exhibit is titled "CDC, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (March 23, 2020)" which can be found at https://www.cdc.gov/coronavirus/2019-ncov/index.html. ECF No. 44-1 at 3, 50-75.

Plaintiff does not object to Defendants' request or question the authenticity of these documents. Moreover, this is information found on governmental websites that is available to the public. Therefore, the Court finds that it may take judicial notice of these documents. *See Daniel-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities …, and neither party disputes the authenticity … or the accuracy of the information displayed therein.").

### III. FACTUAL BACKGROUND

#### A. Plaintiff's Factual Allegations

Plaintiff has pre-existing medical conditions of "obesity, pre-diabetes, high blood pressure and respiratory complications requiring a CPAP machine." First Amended Complaint ("FAC"), ECF No. 34 at 3. As a result of these medical conditions, Plaintiff was categorized as a "high risk medical (HRM)" inmate by CDCR. *Id.* He further claims that these medical conditions "increases [his] risk of death or irreparable injury if infected with or exposed to the deadly COVID-19 virus." *Id.*

In early June of 2021, Plaintiff filed a grievance claiming that RJD officials were permitting "infected inmates to be housed with non-infected inmates," using ineffective face masks, and providing "inadequate sanitation" of the housing units. *Id.* In addition, RJD correctional officers were "refusing to wear mandatory face coverings." *Id.* at 4.

Between July and December 2020, Plaintiff claims CDCR Secretary Kathleen Allison (hereinafter "Allison") and CDCR Deputy Director Connie Gipson (hereinafter "Gipson") authorized the transfer of "dozens of inmates" from the California Institution for Men ("CIM") who were infected with COVID-19 to other prisons throughout California, including RJD. *Id.* As a result of this transfer of inmates to RJD, coupled with conditions Plaintiff claims were insufficient to stop the spread of COVID-19, an "outbreak occurred in Plaintiff's immediate housing unit" in December of 2020. *Id.* at 5. Plaintiff alleges Warden Marcus Pollard (hereinafter "Pollard"), Associate Warden B.D. Phillips (hereinafter "Phillips"), Associate Warden D. Lewis (hereinafter "Lewis"), and Facility Captain Garcia (hereinafter "Garcia") "permitted, orchestrated and allowed COVID-19 confirmed positive inmates" to be housed in the same unit as "non-infected inmates." *Id.* "As a result of these official actions Plaintiff was severely infected with COVID-19 virus" and continues to suffer from side effects from the virus. *Id.* at 6, 9.

### B. Defendants' Claims and Evidence

On January 31, 2020, the Secretary of the Department of Health and Human Services (HHS) declared the "2019 Novel Coronavirus (2019-nCoV) outbreak a public health emergency." ECF No. 44-1 at 9. On March 11, 2020, the World Health Organization (WHO) declared COVID-19 a pandemic. *Id.* at 11. Two days later, the President of the United States declared a nationwide emergency due to COVID-19. *Id.*

In March of 2020, the CDCR "started implementing preventive measures" including activating "a centrally-located command center where CDCR and CCHCS [California Correctional Health Care Services] experts monitor information, prepare for known and unknown events, and exchange information centrally in order to make decisions and provide guidance quickly." *Plata v. Newsom*, 445 F. Supp. 3d 557, 562-63 (N.D. Cal. 2020).

On March 13, 2020, Dr. R. Steven Tharratt, the Director of CCHCS Medical Services, and Gipson authored a memorandum "warning that institutions should prepare for severe staff shortages and laying out the basic informational concerns about COVID-

19." Declaration of J. Hill, RJD Warden ("Hill Decl.") at ¶ 2, ECF No. 44-4, Ex. A. The memorandum notified the institutions that the CDCR and CCHCS "will implement mandatory screening questions of all persons entering the <u>secured perimeter</u> of the institutions" beginning March 14, 2020. ECF No. 44-4 at 5, Ex. A.

On April 3, 2020, the CDC issued an "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities." ECF No. 44-1 at 50. This guide "covered the clinical manifestations of COVID-19, different diagnoses, diagnostic testing with algorithms, treatment, transmission, and public health definitions based on definitions provided by the U.S. Centers for Disease Control and Prevention (CDC) and WHO."  ECF No. 44 at 7. It also "listed the procedures to be followed for COVID-19 outbreaks, isolation, and quarantine; recommendations and standards for airborne and droplet precautions, surface cleaning, and contact tracing; and operational information on Personal Protective Equipment (PPE)." *Id.* at 7-8.

On April 6, 2020, RJD "received a Memorandum authored by Dr. Tharratt and Ms. Gipson setting forth detailed guidelines regarding issues surrounding [PPE]." Hill Decl., at ¶ 4. The memorandum discussed the difficulty in obtaining PPE and how to use, apply and remove PPE. *Id.*, ECF No. 44-4 at 77-78, Ex. C. Two days later, the CDCR issued another memorandum "authored by Ms. Gipson regarding COVID-related cleaning protocols." Hill Decl. at ¶ 5, ECF No. 44-4, Ex. D.

On April 16, 2020, Dr. Tharratt and Gipson authored another memorandum "setting forth directions from the California Prison Industrial Authority (CalPIA) regarding mandatory use of cloth face masks by all staff and inmates." Hill Decl. at ¶ 6, ECF No. 44-4, Ex. E. In this memorandum it was determined that once an adequate supply of "two masks per staff member and inmate was procured, masks would become mandatory." *Id.*

On October 27, 2020, Secretary Allison and Federal Receiver Kelso issued a memorandum regarding "staff wearing facial coverings and physical distancing requirements in institutions and facilities." *Id.* at ¶ 7, ECF No. 44-4, Ex. F. On November

25, 2020, Gipson issued another memorandum "regarding a mandatory 14-day modified program." Hill Decl. at ¶ 8, ECF No. 44-4, Ex. G. This memorandum discussed, among other things, modifications requiring changes to institutions' programs including prohibition on contact and family visits, limiting movement, feeding inmates in their cells or one housing unit at a time, mandatory wearing of PPE, social distancing, and other limitations to prevent the spread of COVID-19. *Id.*, ECF No. 44-4 at 90-91.

Doctor S. Roberts, RJD's Chief Medical Officer, attests RJD "utilized COVID-19 screening checkpoints for all employees," required "N95 masks for all employees," "weekly nasal swab testing" for all RJD staff members, implemented social distancing, and "placed limits on the number of people that could congregate in groups." Declaration of S. Roberts ("Roberts Decl.") at ¶¶ 2-6, ECF No. 44-5.

Associate Warden Lewis attests that if "staff was not compliant with COVID-19 protocols, they would be written up or disciplined as necessary." Declaration of D. Lewis ("Lewis Decl.") at ¶ 7, ECF No. 44-3. Officers were "trained to follow the appropriate COVID-19 protocols" which included "emails and memoranda updating staff on the most recent safety precautions to take on- and off-shift," along with "town hall meetings" that were "held every shift to explain the various measures staff were expected to follow." Lewis Decl. at ¶ 5. Every division was required to "conduct COVID-19 tours and complete a checklist to ensure the appropriate standards for cleanliness were met" and the checklists were "required to be approved by the facility captains and warden." *Id.* at ¶ 6.

"Sanitation measures for communal utilities, such as showers, phones, tables, and other items, were performed by inmate porters and, on occasion correctional staff members." *Id.* at ¶ 8. Porters were "expected to clean utilities such as telephones after each use" but in addition, "cleaning materials were left alongside the various utilities so that, if an incarcerated person was concerned the item had not been cleaned, they could use sanitation measures to their own comfort." *Id.*

Prior to December of 2020, "RJD experienced only a handful of unrelated COVID-19 cases" but on December 9, 2020, RJD "went from zero to six confirmed cases

overnight," although the "specific cause of the outbreak remains unknown." Roberts Decl., at ¶ 9. "The number of cases ballooned over the following days, as more tests were conducted in Housing Unit 1." *Id.* Plaintiff tested positive for COVID-19 on December 8, 2020. *See* Declaration of Nathan Guerrero ("Guerrero Decl."), ECF No. 44-2, Ex. A, Transcript of Deposition of Plaintiff Allen Edwards, at 11:14-16 ("Pl's Depo").

When an inmate tested positive for COVID-19, "they would be immediately rehoused to an appropriate medical bed or established isolation unit." Lewis Decl. at ¶ 4. Isolation units were "created in the gymnasium to secure additional housing" for inmates who had tested positive. *Id.*

## IV. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of establishing the absence of any genuine issues of material fact falls on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. In such cases, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

Once the moving party has satisfied its initial burden, the non-moving party cannot rest on the mere allegations or denials of its pleading. The non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party may meet this requirement by

presenting evidence from which a reasonable jury could find in its favor, viewing the record as a whole, in light of the evidentiary burden the law places on that party. *See Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221–22 (9th Cir. 1995). In determining whether there are any genuine issues of material fact, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001) (citation omitted).

## V. DISCUSSION

Defendants argue that Plaintiff brings a claim against them based on supervisory liability, he has not raised a genuine factual dispute as to his Eighth Amendment claim, and even if there is a triable issue with regard to his Eighth Amendment claim, Defendants are entitled to qualified immunity. *See generally* ECF No. 44.

### A. Supervisory Liability

All named Defendants seek summary judgment on the ground that Plaintiff fails to demonstrate any facts or evidence as to "what each defendant did or did not do, or how that defendant's acts caused him injury." ECF No. 44 at 11. Instead, Plaintiff seeks to hold all Defendants liable in their supervisory capacity. *See id.*

"A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A person deprives another of a constitutional right under section 1983, where that person "'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743-44. There is no respondeat superior liability under § 1983; therefore, supervisors, like the named Defendants, may be held liable for the constitutional violations of his or her subordinates only if they "participated

in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

First, Defendants Allison and Gipson argue that Plaintiff "does not present any evidence that his claims stem from any particular acts or omissions by them." ECF No. 44 at 12. In his verified FAC, Plaintiff maintains that between "July and December 2020, Defendants Allison and Gipson orchestrated, authorized, and ordered the transfer of dozens of inmates confined at [CIM] in Chino, California to various other [CDCR] institutions" including RJD. FAC at 4. In his Opposition, Plaintiff maintains that even though Allison and Gipson had designated RJD as a "High Risk Medical" institution, they permitted the transfer of inmates with COVID to RJD which was the "cause of the COVID-19 outbreak in December 2020, which directly caused Plaintiff's exposure to the COVID-19 virus." ECF No. 49 at 5. However, Plaintiff's Opposition is not signed under penalty of perjury, and therefore, the allegations contained therein do not constitute evidence in opposition to the summary judgment motion.[1]

When Plaintiff was questioned in his deposition what evidence he had to show that either Allison or Gipson "were aware that these inmates [transferred from CIM] had COVID-19 and that they were deliberately transferring them to RJD," Plaintiff responded, "I'm not going to be providing that type of information." Pl.'s Depo. at 58:10-15, ECF No. 44-2, Ex. A. Instead, Plaintiff testified that they should be held liable because [t]hey're top officials over CDCR … the ones [who are] higher up are the ones who had to sign orders for transfers." *Id.* at 58:16-20. Defendants argue in their Reply that none of Plaintiff's claims or arguments are, in fact, based on personal knowledge.

---

[1] *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause Jones is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where Jones attested under penalty of perjury that the contents of the motions or pleadings are true and correct."); *Southern California Darts Ass'n v. Zaffina*, 762 F.3d 921, 925-26 (9th Cir. 2014) ("Evidence may be offered to support or dispute a fact on summary judgment only if it could be presented in an admissible form at trial.") (internal quote marks omitted).

ECF No. 50 at 4. The Court agrees that Plaintiff has not provided any evidence to show that any action by Defendant Allison or Defendant Gipson directly caused him to contract COVID-19 and he only alleges that they should be held liable solely due to their supervisory roles which is not a permissible basis for liability in a Section 1983 action. *See Taylor*, 880 F.2d at 1045.

Second, Defendants Pollard, Phillips, Lewis, and Garcia also argue that Plaintiff has "offered no evidence" of any involvement "beyond their role as supervisors." ECF No. 44 at 12. Plaintiff maintains in his verified FAC that these Defendants designated a section of RJD as "quarantine housing" but all the inmates in that unit became infected with COVID-19. FAC at 8. He further argues that these Defendants "sanctioned [the] practice of housing confirmed COVID-19 positive inmates in the same housing units and cells with non -positive inmates." *Id*.

However, in his deposition, Plaintiff once again makes clear that his only basis for holding these Defendants liable is in their supervisory roles. Plaintiff offers no evidence to support his claim that they purposefully housed inmates who tested positive with inmates who tested negative, instead Plaintiff testifies in his deposition that these Defendants should be held liable because "[a]ll prisoners are in their care." Pl.'s Depo. at 25:3-5, ECF No. 44-2, Ex. A. Plaintiff fails to provide any evidentiary support that he was intentionally housed with an inmate who had tested positive or that he ever came into contact with an inmate or staff member who had been infected with COVID-19 due to the conduct of the named Defendants.

In his Opposition, and in his deposition testimony, Plaintiff offers no evidence that he contracted COVID-19 due to any direct, or even indirect, action on the part of any of the named Defendants and instead, he testifies that they should all be held liable solely in their supervisory roles. For these reasons, the Court finds that Defendants have carried their burden of showing an absence of a genuine issue of material fact in dispute and the Court **GRANTS** Defendants' Motion for Summary Judgment based on supervisory liability.

## B. Eighth Amendment claim

Even if Plaintiff were able to establish that Defendants actions somehow caused him to become infected with COVID-19, he is unable to overcome Defendants' showing that there is no triable issue of material fact to establish that any of the named Defendants acted with deliberate indifference to his health and safety. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. In order to state a plausible Eighth Amendment claim for relief, a Plaintiff must allege facts sufficient to show that Defendants acted with 'deliberate indifference.'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A prison official acts with 'deliberate indifference ... only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gipson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro*, 833 F.3d at 1076). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Prison officials have a duty to protect inmates from communicable diseases. *See e.g., Helling v. McKinney*, 509 U.S. 25, 33 (1993) (finding prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease"); *Hutto v. Finney*, 437 U.S. 678, 682-83 (1978) (affirming a finding of an Eighth Amendment violation where a facility housed individuals in crowded cells with others suffering from infectious diseases, such as Hepatitis and venereal disease, and the individuals' "mattresses were removed and jumbled together each morning, then returned to the cells at random in the evening").

### 1. Defendants Allison and Gipson

Defendants Allison and Gipson move for summary judgment on the grounds that there is no evidence in the record to support a finding that either Defendant was deliberately indifferent to Plaintiff's health and safety. ECF No. 44 at 14.

As an initial matter, there is no dispute or challenge to Plaintiff's claims that contracting COVID-19 posed a serious risk of harm. *See Plata*, 445 F. Supp. 3d at 559 ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.).

As set forth above, the basis for his claims against Defendants Allison and Gipson is their purported involvement in transferring inmates to RJD from other institutions who had a positive COVID-19 diagnosis. Specifically, Plaintiff claims he contracted COVID-19 because these inmates were transferred to RJD at the direction of Allison and Gipson. FAC at 4. However, Allison and Gipson argue that Plaintiff offers no evidence to support this claim. Defendants argue that Plaintiff "lacks any evidence that Defendants Allison and Gipson participated in, or were deliberately indifferent regarding, any decision or action affecting prison transfers, social distancing, housing, the use of 'generic' face masks, or sanitization." ECF No. 44 at 14. Instead, Plaintiff was asked if he had any evidence that either Allison or Gipson were "aware that these inmates [from CIM] had COVID-19 and that they were deliberately transferring them to RJD," and he testified in response "they're the ones who are over CDCR" and they are the ones who "had to sign orders for transfers."  P's Depo at 58:10-20, ECF No. 44-2, Ex. A. Even if Plaintiff testifies that Allison and Gipson were responsible for inmate transfers, he presents no evidence that they were actually aware that any of these inmates who were transferred had contracted COVID-19 and they nevertheless housed them with inmates who were purportedly not infected.

Thus, the Court finds there is no triable issue of material fact with regard to either Defendant Allison or Gipson's purported deliberate indifference to a serious risk to Plaintiff's health or safety.

### 2. Defendants Pollard, Phillips, Lewis, and Garcia

As to the remaining Defendants, Plaintiff claims that these Defendants failed to comply with CDC guidelines by not practicing social distancing, housing infected inmates with non-infected inmates, providing inadequate sanitation, and permitting

correctional officers to refuse to wear masks despite it being against policy. *See* FAC at 9.

Defendant Lewis submits a declaration attesting that "[a]t no point were any incarcerated persons who tested positive for COVID-19 deliberately housed with inmates who had not tested positive" at RJD. Lewis Decl. at ¶ 2. Instead, isolation units were "created in the gymnasium to secure additional housing when incarcerated people began testing positive for COVID-19 in December of 2020." *Id.* at ¶ 4.

Defendants also submit the declaration of S. Roberts, the Chief Medical Executive at RJD, who attests to the "policies implemented at RJD" in response to the "COVID-19 pandemic." Roberts Decl. at ¶ 2, ECF No. 44-5. Roberts describes the measures that were taken in an attempt to mitigate the spread of COVID-19 including "COVID-19 testing of inmates and staff, the quarantining or isolating of inmates who tested positive or were exposed to COVID-19, the eventual offering of vaccinations to all inmates and staff," along with the "cleaning and sanitation of housing facilities." *Id.* at ¶ 3.

Roberts also describes the process by which inmates who were transferred from another institution "would be placed in quarantine until it could be determined they were not infected." *Id.* at ¶ 9. If that inmate did test positive, they "would be placed in an isolation unit." *Id.* Moreover, until December of 2020, RJD had "experienced only a handful of unrelated COVID-19 cases" but an outbreak did occur in the Housing Unit "overnight on December 9, 2020." *Id.* The "specific cause of the outbreak remains unknown." *Id.*

In response, Plaintiff admits in his deposition testimony that he was never housed with an inmate who had tested positive for COVID-19 because he has a "single cell." *See* Pl.'s Depo at 52:21-22. Instead, Plaintiff appears to claim that he contracted COVID-19 because he "got breathed on" by an unknown individual. *Id.* at 31:11. Plaintiff alleges that officials at RJD failed to give them proper masks to prevent the spread of COVID-19 and they should have been provided with "KN95 masks." *Id* at 31:13-18. Finally, he claims that it was unnamed correctional officers who brought COVID-19 into RJD

because they "weren't wearing masks." *Id.* at 31:22-25. However, as Lewis attests in her declaration, CDCR policy required staff and inmates to wear masks and "[w]hen staff was not compliant with COVID-19 protocols, they would be written up or disciplined as necessary." Lewis Decl. at ¶ 7.

Here, Plaintiff's own testimony indicates that he contracted COVID-19 on the day before an outbreak was discovered by RJD officials. Dr. Roberts declares that the "specific cause of the outbreak remains unknown." Roberts Decl. at ¶ 9. While Plaintiff offers a number of theories as to how he may have contracted COVID-19, he points to no evidence in the record to demonstrate that any action on the part of the named Defendants was the cause of his diagnosis. As Defendants argue in their Reply, Plaintiff appears to hold unnamed correctional officers liable for his contraction of COVID-19 due to the alleged lack of wearing masks and lack of proper sanitation but does not point to any evidence in the record that the named individual Defendants failed to comply with the CDCR's COVID-19 protocols.

The Court finds that Plaintiff has failed to raise a triable issue of material fact that any of the named Defendants were deliberately indifferent to an excessive risk to his health or safety in violation of his Eighth Amendment rights. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED**.[2] *See Celotex*, 477 U.S. at 323 ("The moving party is 'entitled to a judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.").

///

///

---

[2] Because the Court finds Defendants are entitled to judgment as a matter of law on the merits of Plaintiff's Eighth Amendment claim, the Court need not address Defendants' alternative argument that they are entitled to qualified immunity. *See, e.g.*, *Aguilera v. Baca*, 510 F.3d 1161, 1167, 1174 (9th Cir. 2007) (noting that if no constitutional violation occurred the court need not decide whether qualified immunity applies).

## VI.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's motion for summary judgment as to all counts. Pursuant to Federal Rule of Civil Procedure 58, the Court enters judgment in favor of the Defendants and **ORDERS** the Clerk to close the case.

**IT IS SO ORDERED.**

Dated:  September 20, 2023

_____
Honorable James E. Simmons, Jr.
Unites States District Judge